## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALEX GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | NO. CV 02-1020-MJR-PMF |
| | ) | |
| C/O WOLFE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**FRAZIER, Magistrate Judge:**

This matter was called for an evidentiary hearing on July 13, 2006. Proposed findings of fact and conclusions of law follow.

Plaintiff is an inmate in the Illinois Department of Corrections. He serves a 30-year sentence which resulted from a negotiated guilty plea to first-degree murder based on accountability. The murder in question occurred in Chicago, Illinois, on July 4, 1992. The facts and circumstances of the crime and plaintiff's plea are set froth in an Order of the Appellate Court of Illinois, First Judicial District, No. 1-99-3363. A copy of that Order is admitted into the record as Plaintiff's Ex. 10. A copy of that Order is attached as an Appendix to this proposal. Its contents will not be restated here. Plaintiff's Petition for Leave to Appeal to the Illinois Supreme Court was denied at 198 Ill. 2nd 599 (2002).

The present action is pursuant to 42 U.S.C. § 1983. Plaintiff claims that he was deprived of access to court via confiscation of certain documents which would have assisted his attempt to set aside his guilty plea and exculpate himself.

The documents in question are affidavits from four persons: Tim Payton, Lontray McNeil,

Artis Rose, and Sharon Calfus.  Mr. Payton is now deceased.  The present location of the others is unknown to plaintiff.

Defendants are correctional officers in the Illinois Department of Corrections.  Both were present and testified at the hearing.

Plaintiff testified that he met Wolfe at the Tamms Correctional Center, where plaintiff presently resides.  During 2001, plaintiff moved to D Pod, where he and Wolfe had contact three days a week.  Plaintiff described their relationship as antagonistic.  Plaintiff corroborated that with testimony from Jose Martinez, who was incarcerated in the same pod during May, 2001.  Martinez testified to hearing Wolfe say that he was "going to mess with [plaintiff] by getting his legal material."  The legal material was kept by plaintiff in his cell.  The affidavits were stapled together.

On May 19, 2001, Wolfe conducted a "shakedown" of plaintiff's cell.  Plaintiff did not witness the actual search of his cell.  Books, papers, soap, and other cosmetics were taken.

Wolfe testified that he had one issue with plaintiff concerning mail for which plaintiff was ticketed.  He says that plaintiff's cell was entered and searched because plaintiff had contraband, aluminum foil, in his cell.  He took what he believed to be letters, not legal documents, which were stapled together.  Staples are another no-no at Tamms.  He specifically does not recall notarized documents of any kind.  The uncontroverted evidence also establishes that Wolfe did not know the contents of any document in plaintiff's cell prior to shaking it down on May 19, 2001.

The documents were processed by defendant Harner, who was a property officer at Tamms.  Harner testified that no grievance was filed by plaintiff and no request was received from plaintiff within 30 days of the confiscation concerning the materials.  That being the case, the confiscated materials were destroyed pursuant to prison policy.

Plaintiff offered no evidence that he and Harner had bad blood.

Plaintiff was questioned at the hearing concerning the actual shooting that got him arrested

and his subsequent plea.  By his own admission, plaintiff knew at the time of his arrest and plea who did the shooting and who pointed out the victim to the shooter.  The latter role is what he was charged with and pled guilty to.

He also testified that he knew that Payton, McNeil, Rose, and Calfus could help his defense by testifying that a certain witness or witnesses against him were not at the scene and could not have identified him as the shooter's accomplice.  This was known to him prior to entering a guilty plea.  Plaintiff's only excuse for not revealing these people to investigators or procuring their testimony concerned Mr. Payton, who apparently had his own legal troubles in the form of an active warrant.[1]  The rest, presumably, were still in the neighborhood and available to testify.  He testified that, "Tim [Payton] told me they were out there."  Their present whereabouts are unknown to plaintiff.

Despite knowing this, plaintiff elected to plead guilty.  The voluntariness of his plea is well-documented by the Illinois Appellate Court.

There seems to be no issue that defendant Wolfe took property, including stapled-together papers, from plaintiff's cell.  Plaintiff's claim that Wolfe was acting pursuant to a bad motive lacks evidentiary support.  Martinez's testimony concerning Wolfe's stated goal to "mess with" plaintiff by stealing his legal papers is not credible.  By plaintiff's own testimony, no one, including Wolfe, knew what was contained in the documents or what significance they might  hold.  Wolfe denied any desire to cause plaintiff hardship, and there was nothing offered to explain why Wolfe would go out of his way to cause plaintiff difficulties.  Plaintiff and Wolfe did have words over a mail issue which resulted in plaintiff receiving a disciplinary report.  It hardly follows that Wolfe would go out of his way to further antagonize plaintiff.  He is already serving a 30-year sentence at the most

---

[1]  During plaintiff's cross-examination, the assistant attorney general expressed incredulity that plaintiff would refuse to identify the person who truly did assist in the shooting when facing such a severe sentence.  Plaintiff's reasoning in his response was simple and to the point: "I do that and the next one who gets shot is me."  This explanation has some logic but does not excuse failure to bring in the witnesses.

secure and severe prison in the state.  If plaintiff's theory were to be believed, it would require a finding that  Wolfe knew what was in plaintiff's  missing affidavits and how those might help him. There was no evidence to show that Wolfe even knew why plaintiff was in prison, much less that he knew what could be useful to get plaintiff out of prison.

Prison officials may not impair an inmate's access to courts by unnecessarily frustrating preparation of pleadings and other documents. *Johnson v. Avery*, 393 U.S. 483 (1969).  Obviously, confiscation and destruction of affidavits would fall into that proscription.

Plaintiff must show, however, that he has sustained actual injury by the confiscation of the affidavits, *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996), and that a non-frivolous legal claim has been impeded.  581 U.S. at 352.

Plaintiff cannot show that here.  The record demonstrates that he voluntarily entered a negotiated plea with assistance of able counsel (no complaints were raised), agreed to stipulated facts supporting the plea, and did all of this knowing (according to his own testimony) that the witnesses whose affidavits are the subject of his action "were out there."

It is well-settled that a voluntarily negotiated plea, advised by competent counsel, acts as a waiver of all issues in post-conviction proceedings with the exception of basic constitutional infirmities (not raised in this case) or those situations where the government, driven by a bad or vindictive motive, seeks to hale a defendant back into court on allegations similar to those already the subject of a guilty plea.. *U.S. v. Broce*, 488 U.S. 572, 574 (1989).  The record is conclusive that plaintiff entered his plea voluntarily and with advice of counsel.  He stipulated to the facts necessary to sustain the plea and conviction.  Even if he had the affidavits he claims were wrongly taken, there is no attack he could make against his conviction or sentence.

Plaintiff's excuses for not bringing his putative witnesses to the attention of police, prosecutors, or the court prior to pleading guilty are unavailing.  Whether his failure to do that was

4

motivated by design or negligence is unknown and does not matter.  There is no reason to imagine that he could use those affidavits for anything at this point.  Any post-conviction proceeding he might bring would, therefore, be a frivolous one, and he has sustained no actual injury.

For the forgoing reasons, the Court should enter a finding against plaintiff and in favor of defendants and enter judgment accordingly.

**SUBMITTED:  August 15, 2006.**


_**s/Philip M. Frazier**_____
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**

**<u>APPENDIX</u>**



SECOND DIVISION
October 30, 2001

**NOTICE**
text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

No. 1-99-3363

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from the
                                        )    Circuit Court of
            Plaintiff-Appellee,         )    Cook County.
                                        )
v.                                      )    No. 93 CR 2414
                                        )
ALEX GILBERT,                           )    Honorable
                                        )    Mary Ellen Coghlan,
            Defendant-Appellant.        )    Judge Presiding.

O R D E R

Defendant Alex Gilbert entered into a negotiated guilty plea
to first-degree murder based on accountability and was sentenced
to a 30-year prison term. There was no motion to vacate the plea
and no direct appeal. Defendant subsequently filed a pro se
post-conviction petition pursuant to the Post-Conviction Hearing
Act (Act) (725 ILCS 5/122-1 et seq. (West 1996)). The trial
court appointed counsel, who amended and supplemented the pro se
petition. The trial court subsequently granted the State's
motion to dismiss the amended petition without an evidentiary
hearing on his supplemental petition. On appeal, defendant
contends that the trial court was mistaken in its belief that it
had no jurisdiction to conduct an evidentiary hearing on his
supplemental petition, and should have conducted such a hearing
on his claim that his guilty plea was not made knowingly or

A-32

1-99-3363

intelligently and was not voluntary because he had previously been interrogated by police without a parent being present.

Defendant was charged with the July 1992 murder of Kevin Heard on a theory of accountability. Defendant, who was then 14 years old, mistakenly identified the victim as a rival gang member, and the victim was fatally shot by codefendant Joseph Owens, a member of defendant's gang. Defendant was charged as an adult with this offense.

Defendant participated in a plea conference, following which, he changed his plea to guilty. The trial court admonished defendant regarding the offense charged and asked whether defendant had any questions. When defendant indicated that he had questions regarding the results of the plea conference, the trial court allowed him to confer with his attorney, then proceeded to admonish defendant concerning the consequences of pleading guilty and the sentencing range for first degree murder before it inquired whether defendant's guilty plea was his free and voluntary act. Defendant answered affirmatively to all questions.

As a factual basis for the plea, the parties stipulated that Andrea Lanier and Calvin Stringer would testify that on July 4, 1992, they attended various parties with the victim. Later that evening, they were on their way to a barbecue at the home of one of Stringer's relatives in the 8400 block of South Throop Street

1-99-3363

in Chicago. They were traveling in two vehicles. Lanier and
Stringer were in one and the victim was following in his mother's
white Chrysler. When they arrived, the two vehicles were facing
south and slowed at 8437 South Throop Street while the occupants
looked for the house and parking spaces. There were people
standing on the sidewalk on the east side of the street and a
person came from the gangway of 8437 South Throop Street.
Someone yelled, "cap his ass," before approximately two gunshots
were fired. Lanier and Stringer then sped away with the victim's
car following. When they noticed the victim flashing his lights
at them, they stopped and went back to his vehicle. They saw
that the victim had been shot in the back and was slumped over in
his seat. Lanier and Stringer then drove the victim to the
hospital.

The parties further stipulated that Monica Collier would
testify that at 12:25 a.m. on July 5, 1992, she was at a
relative's house at 8443 South Throop Street. She was on the
porch and walked to her automobile which was parked across the
street. Collier saw some people standing on the sidewalk whom
she knew were members of the Blackstone street gang. Collier
opened her car and was retrieving cassettes when two vehicles
facing south stopped alongside her car. She saw defendant walk
towards the victim's car holding a crutch, which he then pointed
at the car. When defendant called out to the other people on the

3                    A-34

1-99-3363

sidewalk, "That's folks," and words to the effect of "get him," "pop him," "cap him," Collier saw codefendant fire a handgun at the victim's car. She ducked down when the shooting began. Collier subsequently identified both defendant and codefendant from a lineup.

The parties also stipulated that Assistant State's Attorney David Styler would testify that he interviewed defendant on July 6, 1992, at 6:30 p.m. in the presence of Detective Dwyer and Youth Officer Walsh. After Styler advised defendant of his rights, defendant gave a five-page written statement.

In his statement, defendant indicated that he was 14 years old and had been a member of the Blackstone street gang for two years. The Blackstones were rivals of the Disciples street gang. Defendant had been on the 8400 block of South Throop Street about 12:20 a.m. on July 5, 1992, "goofing around" and using his friend's crutches when two cars drove towards him with their headlights off. There were two people in the first car and one person in the second car. The first car was trying to park in front of a house near where fellow gang member Carl Donny Love lived, and the second car stopped behind the first. While the second car was stopped, defendant walked around the car and saw the driver wearing a baseball cap tilted on the back side of his head with bill facing behind his right ear. When defendant heard one of his fellow Blackstones ask if the driver was a Disciple,

4                    A-35

1-99-3363

defendant yelled back that he was because of how he wore his hat. Joe, a fellow Blackstone, then ran from a nearby gangway holding a .45 caliber pistol in his right hand.  Joe fired at the second car, and the bullet went through the rear passenger window on the driver's side.  The driver ducked down after the first shot, but then sat up again.  Joe fired a second shot, and the driver ducked again, but did not get back up.  The car then drove towards 85th Street behind the first car.  After the shooting, defendant went to a friend's house.  He learned later that day that Joe had killed the man in the car.

The parties also stipulated to Detective Duffy's testimony that he witnessed the statement and that he conducted a lineup on July 6, 1992, at 12:30 p.m., from which defendant was identified by Monica Collier.

After a stipulation to defendant's age at the time of the hearing (he was 15 years old), the court asked defendant if those were the facts to which his plea was entered, defendant replied affirmatively and was sworn to the facts of the statement.  The trial court then questioned defendant as to whether he still wished to plead guilty, and when the defendant responded affirmatively, the court found that defendant pleaded guilty knowingly and voluntarily.  It also found a factual basis to support the plea.

During sentencing, defendant made a statement of remorse.

A-36

1-99-3363

The trial court then sentenced defendant to the agreed-upon term of 30 years.

Defendant did not file a motion to vacate his guilty plea or a direct appeal but subsequently filed a pro se post-conviction petition. The State filed a motion to dismiss defendant's pro se petition, and appointed counsel filed a supplemental petition. The supplemental petition alleged that the failure of police to contact defendant's mother or allow her to see him before he gave a statement even though she was at the police station requesting to see him, rendered the statement involuntary. The supplemental petition asserted that trial counsel's failure to file a motion to suppress the statement constituted ineffective assistance of counsel, requiring that the plea be vacated and a new trial granted.

Defendant's mother, Theresa Jackson, filed an affidavit, in which she averred that she was not present when defendant was arrested; that she was not contacted by the police, but was notified at 2:30 p.m. by a neighbor of defendant's arrest; that she then went to the police station and repeatedly requested to see defendant but was not allowed to see him because he was being questioned; and that she saw defendant being transported from the interview room to the jail, at which time defendant told her to call a lawyer.

The State filed a motion to dismiss the supplemental

6

A-37

1-99-3363

petition, contending that defendant misstated the law with regard
to the voluntariness of juvenile confessions and that the
decision to present a motion to suppress was a strategic decision
by counsel.

The trial court held a hearing on the State's motion on
August 5, 1999.  At the hearing, the trial court stated that it
did not have legal authority to review anything other than
jurisdictional issues which were not being raised here.

The court did, however, consider the substantive allegations
of defendant's petition and concluded that they were without
merit.  Specifically, the court found that there was no
indication that the plea was anything other than voluntary and
the fact that defendant then claimed that his confession was
involuntary was not a sufficient basis on which to then argue
that he was entitled to an evidentiary hearing.  The court also
found that standing alone, the fact that defendant's mother was
not allowed to see him did not render defendant's confession
involuntary.  Finally, the court found that defendant had not
established the prejudice element requirement to show ineffective
assistance of trial counsel based on counsel's failure to file a
motion to suppress his statement, because the factual basis for
the plea was not based solely on defendant's statement, but
included eyewitness testimony.  The court then granted the
State's motions to dismiss both the pro se and supplemental

A-38

1-99-3363

petitions.

Defendant contends that the trial court was mistaken in its belief that it had no jurisdiction to conduct an evidentiary hearing, which was warranted by the allegations and affidavit, and the court should have conducted such a hearing on defendant's supplemental petition.  He argues that he was not allowed to have his mother present for his custodial interrogation to protect his rights, and that his attorney's failure to file a motion to suppress his statement based on that factor denied him both effective assistance of counsel and due process of law.

We agree with defendant's contention that the trial court erred in dismissing his petition on the basis that it had no jurisdiction to hear substantive issues because defendant had not filed a motion to withdraw his guilty plea.  A defendant who pleads guilty is not required to withdraw his plea and perfect a direct appeal pursuant to Supreme court Rule 604(d) (188 Ill. 2d R. 604(d)) in order to pursue post-conviction relief.  People v. Stein, 255 Ill. App. 3d 847, 848 (1993).  A guilty plea does not result in a waiver of all issues raised in a post-conviction petition when the voluntariness of the plea itself is raised.  People v. Brumas, 142 Ill. App. 3d 178, 180 (1986).  However, the trial court also granted the State's motion to dismiss on the basis that defendant's claims were without merit and unsupported by the record.

A-39

8

1-99-3363

The Act provides a supplemental proceeding for a defendant who alleges that he was substantially denied his constitutional rights at trial. People v. Wilson, 307 Ill. App. 3d 140, 144-45 (1999). Filing a post-conviction petition, however, does not entitle a defendant to an evidentiary hearing as a matter of right. Wilson, 307 Ill. App. 3d at 145. The petitioner is entitled to an evidentiary hearing on a post-conviction claim only if he has made a substantial showing based on the record and supporting affidavits, that his constitutional rights were violated. People v. Cloutier, 191 Ill. 2d 392, 397 (2000). In making that determination, all well-pleaded facts in the petition and in the supporting affidavits are to be taken as true. People v. Ward, 187 Ill. 2d 249, 255 (1999). Upon a motion to dismiss, a trial court may summarily dismiss a post-conviction petition without requiring extrinsic evidence of the trial record shows the petition to be without merit. Wilson, 307 Ill. App. 3d at 145. Our review of the dismissal of a post-conviction petition without an evidentiary hearing is de novo. Cloutier, 191 Ill. 2d at 397.

Defendant's petition first alleges that his guilty plea was not knowing or voluntary. If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and, therefore, is void. People v. Williams, 188 Ill. 2d 365, 370 (1999). Supreme Court Rule 402 (177 Ill. 2d R. 402)

9                                                      A-40

1-99-3363

requires that before the trial court accepts a defendant's plea
of guilty the defendant must be admonished as to the nature of
the charges against him, his right to a jury trial and the right
to confront witnesses against him. <u>People v. Maury</u>, 287 Ill App.
3d 77, 82 (1997).  The rule only requires substantial compliance
(<u>Maury</u>, 287 Ill. App. 3d at 82), and defendant does not claim
that Rule 402 was not complied with.  After an examination of the
record, we find that no support for defendant's contention that
his plea was not knowing or voluntary.  Where the trial record
refutes defendant's assertions that his plea was not knowingly
and voluntarily entered, courts may properly dismiss or deny a
defendant's petition. <u>People v. Fern</u>, 240 Ill. App. 3d 1031,
1041 (1993).  We find that the trial court properly dismissed
defendant's petition on this basis.

Defendant also contends that his trial counsel was
ineffective for failing to file a motion to suppress his
statement, which was involuntary because it was taken without his
mother being present.  To succeed on a claim of ineffective
assistance of counsel, defendant must show that his counsel's
performance was deficient in that it fell below an objective
standard of reasonableness, and that counsel's deficient
performance so prejudiced him that there is a reasonable
probability that the outcome would have been different without
counsel's errors. <u>Cloutier</u>, 191 Ill. 2d at 398.  A reviewing

10          A-41

1-99-3363

court may reject a claim of ineffective assistance of counsel by finding that defendant was not prejudiced by counsel's representation without determining whether counsel's performance was deficient. Cloutier, 191 Ill. 2d at 398. To prevail on a claim that trial counsel is ineffective for failing to file a motion to suppress, defendant must show that the motion would have been granted and that the trial outcome would have been different if the evidence had been suppressed. People v. Rodriguez, 312 Ill. App. 3d 920, 925 (2000).

In determining whether a confession was voluntary, we must consider the totality of the circumstances. In re G.O., 191 Ill. 2d 37, 54 (2000). The test is whether the confession was made "freely, voluntary, and without compulsion or inducement of any sort, or whether defendants will was overcome at the time he confessed." People v. Pogue, 312 Ill. App. 3d 719, 727 (1999), quoting People v. Prude, 66 Ill. 2d 470, 475 (1977). Factors to be considered when determining voluntariness are: the defendant's age, education, intelligence, experience, and physical condition; the duration of the questioning; whether he was advised of his constitutional rights; whether he was subjected to any threats, promises, or physical or mental coercion; and whether the confession was induced by police deception. People v. McNeal, 298 Ill. App. 3d 379, 391 (1998). For juveniles, there are some additional considerations: the time of day when questioning

11                A-42

1-99-3363

occurred and the presence or absence of a parent or other adult interested in the minor's welfare. McNeal, 298 Ill. App. 3d at 391.

Here, defendant made no argument in the trial court nor on appeal with respect to any of the factors listed above except that he was not allowed to speak with his mother before or during questioning, which he contends is sufficient to invalidate his confession. Defendant misstates the law. There is no per se right for a juvenile to have a parent present during questioning, or to consult with one prior to questioning. Pogue, 312 Ill. App. 3d at 728. The absence of a parent is one factor to consider but is not determinative of whether a juvenile's confession should be suppressed. Pogue, 312 Ill. App. 3d at 728.

The stipulated evidence at the plea hearing showed that defendant was arrested pursuant to a search warrant in connection with the shooting death of Kevin Heard. Defendant was taken to the police station and placed in a lineup, where he was identified by eyewitness Monica Collier. Defendant was then taken for questioning, where he subsequently made a partially exculpatory statement in which he identified Joseph Owens as the shooter. Defendant's mother submitted an affidavit stating that she was at the police station and requested to see defendant, but was not allowed to, which alone is an insufficient basis on which to conclude that defendant's statement was involuntary.

12                    A-43

1-99-3363

Defendant has not shown that counsel could likely have proven that the confession was involuntary and the record shows the contrary. Nor has defendant pointed to any other factor to support his contention. Counsel was not deficient and defendant was not prejudiced because the stipulated evidence apart from the confession was sufficient to show a factual basis for defendant's plea. We therefore conclude that trial counsel was not ineffective for failing to file a motion to suppress defendant's voluntary statement to police, and the trial court properly denied defendant's post-conviction petition on this basis.

Defendant relies on our decision in In re A.R., 295 Ill. App. 3d 527 (1998), to support his argument that counsel was ineffective for failing to file a motion to quash and suppress when a juvenile defendant was denied access to his parents during questioning. That case is distinguishable for the following reasons: it was not a negotiated guilty plea case, there was no youth officer present during questioning, and the defendant's statement comprised all of the evidence against him because the trial court found the other witnesses to be incredible.

We conclude that the trial court did not err in dismissing defendant's post-conviction petition on the State's motion without an evidentiary hearing.

Accordingly, the judgment of the circuit court is affirmed. As part of our judgment, we grant the State's request for $100 as

13            A-44

1-99-3363

costs for defending this appeal.   People v. Nicholls, 71 Ill. 2d
166 (1978).

  Affirmed.

  GORDON, J., with BURKE, P.J. and McBRIDE, J., concurring.

A-45

14